IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HAROLD JOSEPH KENDALL individually, and as the Administrator of the ESTATE OF SHANE MIGUEL KENDALL. | ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| | ) ) | |
| FULTON COUNTY, GEORGIA, a political subdivision of the State of Georgia; NAPHCARE, INC. an Alabama corporation, SHERIFF PATRICK LABAT, in his individual capacity and in his official capacity as Sheriff of Fulton County, Georgia, MICHAEL AGYEI, individually and, EDITH NWANKWO, individually. Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |

## COMPLAINT FOR WRONGFUL DEATH
## AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Joseph Kendall, individually and as Administrator of the

Estate of Shane Kendall, by and through undersigned counsel, and files this

Complaint for Wrongful Death and Demand for Jury Trial against the named

Defendants, and shows this Court as follows:

## I.     INTRODUCTION AND OVERVIEW

1.

All pretrial detainees, no matter their station in life, are entitled to

constitutionally adequate medical care when confined behind bars, as well as

medical care that complies with the accepted standards of care. This is in an

action under 42 U.S.C. § 1983 and under Georgia law arising from the

events and circumstances leading up to, surrounding and causing the death

of 19-year-old Shane Kendall in the Fulton County Jail on February 1, 2021.

2.

On February 1, 2021, Plaintiff Shane Kendall ("Shane") was an inmate at

and in the custody of the Fulton County Jail, located at 901 Rice Street,

Atlanta, Georgia, 30318, Fulton County.

3.

On that date, jail staff discovered Shane unresponsive, hanging by a bedsheet tied to his bunkbed in his cell and called for urgent medical assistance.

4.

While waiting for medical providers to arrive, jail guards and staff failed to provide proper, continuous medical care to Shane or act with any urgency despite knowing Shane was experiencing a medical emergency. The cursory treatment that Fulton County jail staff did attempt to provide to Shane was grossly inadequate and unreasonably delayed under the circumstances.

5.

Despite being alerted by jail staff that Shane was unresponsive and in need of immediate medical attention, NaphCare, Inc. and its employees, Edith Nwankwo and Michael Agyei, failed to respond to Shane's emergency in a reasonable, timely manner and failed to provide proper medical care to Shane. Any treatment they did provide to Shane was grossly inadequate and unreasonably delayed under the circumstances.

6.

It took NaphCare, Inc. medical provider, Edith Nwankwo, approximately 7 minutes to arrive to the scene after receiving the emergency call despite being just three floors down and available to respond.  When Edith Nwankwo eventually arrived, she did not move with any urgency and deliberated refused to provide any medical care to Shane or partake in any resuscitation efforts, including CPR or vital checks, telling jail staff that she had a bad knee.

7.

Fellow NaphCare, Inc. medical provider, Michael Agyei, arrived long after Edith Nwankwo, more than 16 minutes after receiving the emergency call, with the Automated External Defibrillator ("AED"). Although Michael Agyei attempted to provide medical assistance to Shane, jail staff remarked that he was visibly disoriented and unable to perform CPR adequately or assist in resuscitation efforts.

8.

Defendants' reckless failure to provide proper medical care despite knowing Shane was experiencing a potentially fatal medical emergency and not breathing posed an unreasonable risk of death, if not, serious injury to his future health and safety.

9.

Defendant's knowing failure to provide medical care proximately caused or contributed to Shane's wrongful death.

10.

Defendants named in this lawsuit and discussed below are 1) Fulton County Jail employees, staff, and agents, including medical personnel, who were aware of Shane's life-threatening medical needs (namely, his inability to breathe and his unresponsiveness), and 2) supervisors, policy-makers, government bodies and medical providers  that created policies and procedures and were responsible for the implementation of such policies and procedures that caused a gross, systemic lack of basic medical care for Fulton County jail inmates, including Shane.

## II.    <u>FACTS</u>

11.

On February 1, 2021, nineteen (19) year-old Shane, an inmate at the Fulton County jail (Fulton County, Georgia) was pronounced dead by EMS after being discovered in his cell, unresponsive and hanging by a bedsheet tied to his bunkbed.

12.

Shane had been in continuous custody since his arrest on June 9, 2017, when he was just fifteen (15) years old. Initially, due to his age, Shane Kendall was housed for a brief time at the Regional Youth Detention Center ("RYDC").

13.

While at the RYDC, Dr. Shane Savage, an expert forensic psychiatrist, evaluated Shane and determined he was legally incompetent to stand trial. As a result, Shane was transferred to and treated at Georgia's Pathways-

Turner Center, an in-patient psychiatric hospital for juveniles, who are charged as adults and in need of competency restoration.

14.

At the Pathways-Turner Center, Shane was re-evaluated and diagnosed with ADHD, schizophrenia, autism, bipolar disorder, developmental delay and visual hallucinations.  These diagnoses are consistent with prior diagnoses by medical providers throughout Shane's life.

15.

Upon completing his competency restoration curriculum at Pathways-Turner Center in mid-May, 2019, Shane was then transferred to the Fulton County jail, having aged out of the RYDC upon turning 17 years old.

16.

NaphCare, Inc. providers documented their knowledge of Shane's psychiatric diagnoses, recent psychiatric hospitalization, medication regimen and his need for ongoing, regular mental health care.

17.

Despite having knowledge of Shane's serious mental health diagnoses, age, and recent psychiatric hospitalization, pursuant to customs, practices, and procedures at the Fulton County jail, jail staff and/or medical providers assigned Shane to general population housing and failed to protect him there.

18.

While housed in general population at the Fulton County jail, Shane was repeatedly mistreated and purposefully ignored by jail staff, who knew Shane Kendall was being physically abused and bullied by other inmates due to his perceived homosexuality and strange behavioral issues.

19.

During Shane's incarceration in Fulton County jail, he was prescribed and medicated with increasingly high dosages of Depakote, Seroquel and Benadryl by NaphCare, Inc. medical providers.

20.

While increasing his daily Seroquel dosage in July 2020, NaphCare, Inc. medical providers reported educating Shane about significant weight gain and metabolic syndrome as negative side effects of the medication. At that same time, NaphCare, Inc. medical provider, Masresha Zenebe, PA, reported that Shane lost approximately 65 pounds between his initial incarceration in August 2019 (when he weighed 225 pounds) and then on  July 14, 2020 (when he weighed just 168 pounds). At all times throughout Shane's incarceration in the Jail, NaphCare, Inc. medical providers reported that Shane was medication compliant and without side effects.

21.

During Shane's incarceration in Fulton County jail, jail staff and medical providers knew he suffered dramatic weight loss however it was never adequately addressed or documented nor did any medical provider note it as cause for concern.

22.

During Shane's incarceration in Fulton County jail, jail staff and medical
providers were concerned that Shane was giving away his medication and
not medication compliant but never attempted to address it with Shane, did
not adequately address it, failed to investigate it nor did anything to ensure it
did not continue happening.

23.

Despite knowing that Shane, was, among other things, significantly mentally
impaired, losing significant amounts of weight, physically deteriorating and
possibly giving his medication to other inmates and/or not taking is
medication, jail staff and medical providers failed to adequately monitor,
treat and/or protect Shane. Neither Fulton County jail nor NaphCare, Inc.
had adequate policies and procedures in place to allow Shane to receive
adequate medical treatment and health care.

24.

Throughout Shane's incarceration in the Fulton County jail, jail staff and
NaphCare, Inc. employees knew that Kendall suffered from mental illness

and was both physically deteriorating and mentally decompensating but failed to adequately address, treat or respond to Shane's medical problems in an adequate, timely manner.

25.

A month before Shane's death, on January 1, 2021, Fulton County Jail employee, Lieutenant Jones, asked NaphCare, Inc. medical provider, Roberto Montana MHP, to clarify whether Shane's "issues" (which were clearly apparent to jail staff and medical providers as they were the subject of this conversation) were mental health or behavioral in nature. Roberto Montana MHP told Lieutenant Jones that Shane suffered from mental health problems. Both Fulton County and NaphCare, Inc., by and through their employees, knew that Shane was mentally ill and having "issues."

26.

On January 14, 2021, NaphCare, Inc. provider, Pamela Nelome, NP, reported that Shane was medication compliant and had no side effects. In the same report, she described Shane's affect as dysphoric and noted that Shane reported feeling depressed and asked for another increase in his Seroquel

dosage. For reasons not provided in the medical record, his prescription for

Depakote (to manage bipolar disorder) was, then, increased.

27.

On January 28, 2021, NaphCare, Inc. provider, Brenda Dugan, MHP,

conducted an annual mental health evaluation with Shane. Although Shane

denied suffering from visual hallucinations and did not appear to have

delusional thinking, NaphCare, Inc. provider, Brenda Dugan, MHP indicated

that Shane reported feeling depressed. She also reflagged Shane as suffering

from Psychotic Disorders and Mood Disorders as well as Impulsiveness.

28.

On January 31, 2021, the night before Shane's death, Fulton County jail staff

observed him lying in a fetal position on the floor of his cell. When they

asked him what was going on, Shane told them he wanted to be in a different

cell. When Fulton County jail staff told Shane "no" and shut him back in his

cell, Shane assaulted his cellmate. Shane's cellmate, Tyrell Curry, later said

that Shane told him he hit him because he wanted to get out of the cell badly

and knew that if he started a physical altercation, both Shane and his

cellmate would be removed from their cell and sent to the medical floor,

29.

During the evening of January 31, 2021 through the morning of February 1,

2021, NaphCare providers, Michael Agyei, PA-C, and Edith Nwankwo, RN,

were responsible for providing medical care, evaluation and treatment to

Fulton County inmates, including Shane. Despite Fulton County jail staff

reporting that they took Shane and his cellmate, Tyrell Curry, to the medical

floor, it is unclear whether Shane received medical care, observation and

treatment following the altercation. Shane did not appear in the medical

logbook for January 31, 2021 nor is there any record of him being treated,

observed or evaluated by any medical provider.

30.

Jail staff reported that they returned Shane back to his cell, alone, and

provided him with notice of a disciplinary action against him for fighting

with his (former cellmate) earlier that evening. The notice informed him of

their intention to punish him with forty-five (45) days of 24-hour, solitary lockdown.

31.

In the early morning hours of February 1, 2021, at approximately 5:26am, jail staff conducted their customary, hourly, security rounds and noted no issues or concerns regarding Shane or anything else occurring in his pod area (6N400).

32.

Jail staff conducted their next security round at 6:07am on February 1, 2021 and discovered Shane unresponsive, hanging from his bunkbed with a bed sheet, in his jail cell, 6N402.

33.

Deputies put out an emergency call to the on-site medical providers at approximately 6:10am, asking for their immediate assistance with an inmate was unresponsive and had apparently attempted suicide in cell 6N402.

34.

In response to receiving this emergency call, NaphCare, Inc. medical provider, Edith Nwankwo, RN, called her NaphCare coworker, Michael Agyei. PA-C, who was also on duty and in the building but unaccounted for. When he failed to answer her calls, Edith Nwankwo did not take initiative or respond with an urgency to the scene of Shane's medical emergency. In fact, Fulton County deputy, Synclare Henry, who was assigned to the medical floor that morning, had to suggest to Edith Nwankwo that they not wait for Michael Agyei and instead, respond to the emergency call without him. Only after urging from Synclare Henry did Edith Nwankwo head towards Shane's cell, which was just three (3) floors up from their location, with a stretcher. Edith Nwankwo, RN, did not bring an Automated External Defibrillator ("AED") with her.

35.

At 6:19am, approximately 9 or 10 minutes after learning of Shane's medical emergency, Edith Nwankwo, RN, and Fulton County deputy, Synclare Henry, arrived to cell 6N402. No continuous CPR had been provided at this point.

36.

Once on scene, Edith Nwankwo, RN, affirmatively refused to perform CPR
or provide any medical treatment or care to Shane, including checking for
vital signs or ensuring his airway was cleared, telling jail staff she had a bad
knee.

37.

Then, at approximately 6:27am, Michael Agyei, PA-C, appeared at the
scene, with the Automated External Defibrillator ("AED"), more than 15
minutes after the emergency call was received. Although he attempted to
assist Shane upon his arrival, Fulton County jail staff reported that Michael
Agyei, PA-C, was hindering resuscitation efforts, was visibly disoriented
and was clearly unable to provide medical care or treatment to Shane.

38.

By the time the AED was finally applied to Shane, no shock was advised.

.

39.

Edith Nwankwo, RN, and Michael Agyei, PA-C, each provided narrative reports about their involvement in response to Shane's medical emergency on February 1, 2021. Neither Edith Nwankwo, RN, nor Michael Agyei, PA-provided truthful accounts of what occurred, conveniently omitting their own delay, refusal to provide care, and overall failure to provide adequate medical care to Shane.

40.

An autopsy performed by Jacqueline Benjamin, M.D., of the Fulton County Medical Examiner's Office, listed Mr. Kendall's cause of death as hanging. In the medical examiner's report, Jacqueline Benjamin, M.D. noted that there was faint red discoloration and abrasion on his neck. She also noted the absence of petechiae or purpura on his skin, conjunctiva or oral mucosa.

41.

Shane Kendall's conditions were treatable. His death was preventable.

42.

Defendants actions and omissions led to the wrongful death of Shane, his pain and suffering before he died and the infliction of emotional distress of Plaintiff Joseph Kendall, Shane's father.

43.

As a direct, proximate, and foreseeable result of the negligent acts and omissions of the Fulton County jail and NaphCare, Inc., and/or their agents, servants and employees, in their medical negligence, negligence and deliberate indifference, as complained of herein, Mr. Kendall suffered excruciating mental, physical and emotional pain up until the time of his tragic death.

44.

In accordance with O.C.G.A. §§ 36-11-1 and 50-21-26, on September 13, 2021, the appropriate Defendants were sent an Anti Litem Notice on via certified mail, return receipt requested (attached hereto as Exhibit 1).

### III.   <u>JURISDICTION</u>

45.

Jurisdiction exists in this case pursuant to the Fourteenth Amendment of the

U.S. Constitution, 42 U.S.C. §1983 and §1988 and 28 U.S.C. § 1331, §1343.

Additionally, jurisdiction exists pursuant to 28 U.S.C. § 1332, as the matter

in controversy: a) exceeds the sum or value of $75,000, exclusive of interest

and costs, and b) is between citizens of different States, as the Plaintiff is a

citizen of the State of Georgia and Defendant NaphCare is a citizen of

Alabama; and, additionally Defendants Patrick Labat, Michael Agyei and

Edith Nwankwo are citizens of Georgia.

46.

Further, this Court has supplemental jurisdiction, pursuant to 28 U.S.C.

§1367(a) over the state law claims addressed herein.

47.

All relief available under the foregoing statutes is sought herein by Plaintiff.

## IV.   <u>VENUE</u>

### 48.

Venue is proper pursuant to 28 U.S.C. § 139 (b) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District.

### 49.

Assignment to the Northern District of Georgia is proper pursuant to Northern District of Georgia Local Rules, because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this division.

## V.   <u>TIMELINESS OF COMPLAINT</u>

### 50.

This lawsuit has been filed within the statute of limitations as provided by O.C.G.A. § 9-3-71 (...an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.") See O.C.G.A. § 9-3-71.

## VI.   <u>PARTIES</u>

### A. <u>Plaintiff</u>

51.

Shane Miguel Kendall ("Shane") was at all times relevant to this Complaint a resident of the State of Georgia in the custody and care of the Fulton County jail in Fulton County, Georgia.

52.

Plaintiff Harold Joseph Kendall ("Plaintiff") is a resident of the State of Georgia. Plaintiff is the adopted father and sole heir of Shane Miguel Kendall. Plaintiff is the Administrator of the Estate of Shane Kendall. Plaintiff brings this action individually and in his representative capacity on behalf of the Estate of Shane Miguel Kendall as the Administrator of the Estate of Shane Miguel Kendall.

### B. <u>Named Defendants</u>

### i.   **Fulton County**

53.

Defendant Fulton County is a political subdivision of the State of Georgia and subject to the jurisdiction of this Court. Service may be perfected upon this Defendant through Robb Pitts, Fulton County Commission Chairman at 141 Pryor Street SW, 10th Floor, Atlanta, Georgia 30303. Defendant Fulton County is subject to the jurisdiction of this Court, and venue is proper.

54.

It is the responsibility of Defendant Fulton County to maintain its inmates and provide its inmates with needed medical and hospital attention.

55.

It is the responsibility of Defendant Fulton County to establish and implement adequate policies and procedures which enable the jail to maintain its inmates and provide its inmates with timely needed medical and hospital attention, particularly in the context of a lethal emergency.

56.

Defendant Fulton County was responsible for, and knowingly promulgated, enforced, and allowed to persist, policies and procedures of the Fulton County jail that, among other things:

a)  Caused too few qualified employees, staff, and agents, including medical personnel and guards, to be hired at the Jail;

b)  Caused the Jail to have inadequate space to enable it to perform adequate medical care and security services to its inmates;

c)  Caused the Jail to have inadequate resources to enable it to provide adequate medical care and security services to inmates;

d)  Caused the Jail to have inadequate training and supervision of its employees, staff and agents, including guards and medical personnel, resulting in the inadequate delivery of medical care, emergency responsiveness and protocols, provision of security, and inability to properly conduct the intake and classification of inmates.

57.

Defendant Fulton County is also responsible for the training and supervision of Jail staff, employees and agents, including medical personnel.

58.

Defendant Fulton County failed to adequately train and supervise its Jail staff, employees and agents, including medical employees.

59.

The Jail staff, employees, and guards, as well as the medical physicians, nurses and staff rendering services to Shane were employees/agents of Fulton County, acting in the course and scope of their agency.

60.

At all times relevant to this Complaint, Defendant Fulton County knew that the jail would not be able to provide inmates with adequate medical care for serious and/or emergency medical needs should the need arise, such as if an inmate were to be found unresponsive, hanging from a bedsheet in his cell,

and failed to take reasonable steps to help the inmate or address the problems.

61.

Defendant Fulton County knowingly permitted the policy, custom, and practice of understaffing to persist throughout the jail.

62.

Defendant Fulton County knowingly permitted the policy, custom, and practice of denying inmates access to adequate medical care at the Jail to persist.

63.

Defendant Fulton County knowingly permitted the policy, custom, and practice of denying inmates adequate security measures to persist.

64.

Defendant Fulton County knowingly permitted to persist the policy, custom, and practice of failing to respond to urgent medical emergencies in a timely and adequate manner.

65.

Defendant Fulton County knowingly permitted to persist the policy, custom, and practice of failing to protect mentally ill inmates, housing them recklessly amongst general population inmates and disciplining them as if they were general population inmates (in direct violation of Fulton County written procedure regarding discipline for mentally ill inmates).

66.

Defendant Fulton County knowingly permitted to persist the policy, custom, and practice of failing to properly conduct inmate intake evaluations, suicide risk assessments or housing assignment determinations.

67.

Defendant Fulton County knew that its employees, staff, and agents were not properly conducting adequate intake evaluations, suicide risk assessments or housing assignment determinations.

68.

Defendant Fulton County knowingly permitted to persist the policy, custom and practice of failing to protect homosexual inmates by failing to segregate them from general population and allowing them to be bullied and physically abused by fellow inmates.

69.

Defendant Fulton County knew that its employees, staff, and agents were not properly protecting homosexual inmates, failing to segregate them from general population inmates and failing to ensure their safety.

70.

Defendant Fulton County knowingly permitted to persist the policy, custom and practice of failing to protect mentally ill inmates by failing to segregate them from general population inmates, and instead, allowing them to be bullied and physically abused by fellow inmates.

71.

Defendant Fulton County knew that its employees, staff, and agents were not properly protecting mentally ill inmates, failing to segregate them from general population inmates or failing to ensure their safety.

72.

Defendant Fulton County knew that its failure to train and supervise reflected deliberate indifference to serious medical needs.

73.

In addition to liability through its own actions, Defendant Fulton County is also liable under the doctrine of *Respondeat Superior* for the acts and omissions of its officials and employees as well as for the enforcement of its policies, practices and customs that have violated Shane Kendall's rights.

74.

Defendant Fulton County's actions and inactions exhibited deliberate indifference to the safety and well-being of Shane and subjected him to the

unnecessary and wanton infliction of pain and ultimately, death, which constituted cruel and unusual punishment.

### ii.   NaphCare, Inc.

75.

NaphCare, Inc. ("NaphCare") is a foreign profit corporation,  and is authorized to transact business in Georgia. NaphCare's principal office is located at: 2090 Columbiana Road, Suite 4000, Birmingham, AL, 35216.

NaphCare may be served upon its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092, in Gwinnett County Georgia. NaphCare is subject to the jurisdiction of this Court, and venue is proper.

76.

Defendant NaphCare, as authorized pursuant to a contract with Fulton County Sheriff's Office, administers medical care for Fulton County inmates.

77.

At all times relevant to this Complaint, Defendant NaphCare was responsible for the administration, supervision and delivery of health and medical services in the Fulton County jail.

78.

The medical physicians, nurses and staff rendering services to Shane were employees/agents of Defendants NaphCare and Fulton County, acting in the course and scope of their agency.

79.

Defendant NaphCare was responsible for, and knowingly promulgated, enforced and allowed to persist, policies and procedures of the Jail that, among other things:

a)  Caused too few qualified medical personnel to be hired at the jail;

b)  Caused the Jail to have inadequately trained medical personnel to deliver health care services to inmates;

c)  Caused the Jail to have inadequate space to enable it to perform adequate medical care to inmates;

d) Caused the Jail to have inadequate resources to enable it to provide adequate medical care to inmates;

e) Caused the Jail to have inadequate training and supervision of its medical personnel, resulting in the inadequate delivery of medical care; and,

f) Caused the Jail to have inadequate and indifferent responses to the medical emergencies of inmates.

80.

NaphCare was also responsible for the training and supervision of Jail medical personnel. NaphCare, through its employee and agents, knows that its failure to train and supervise reflected deliberate indifference to serious medical needs.

81.

In addition to direct liability, Defendant NaphCare is also liable under the doctrine of *Respondeat Superior* for the acts and omissions of its officials, employees and agents, which occurred in the ordinary course of their employment/agency with NaphCare.

82.

Defendant NaphCare, through its employees and agents also had actual knowledge of Shane's condition in which even a layperson would recognize that Shane had serious medical needs and NaphCare failed to respond reasonably to address those needs.

83.

Defendant NaphCare's actions exhibited deliberate indifference to the safety and well-being of Shane and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

### iii.    **Patrick Labat**

84.

At all times relevant to this Action, Patrick Labat was the Sheriff of Fulton County ("Defendant Labat"). Defendant Labat was responsible for the operations of the Fulton County Sheriff's office, including the Fulton County Jail. Defendant Labat was responsible for the day-to-day operations of the Jail, and in his official capacity as Sheriff, had custody, control and charge of the jail and inmates. At all relevant times Defendant Labat acted under the color of state law. Defendant Labat is being sued for damages in both his individual and official capacities.

85.

Defendant Labat is a resident and citizen of the State of Georgia, and may be
served with process at: 185 Central Ave. SW, 9th Floor, Atlanta, Georgia
30303. Defendant Labat is subject to the jurisdiction of this Court, and
venue is proper.

86.

As the Sheriff of Fulton County, Defendant Labat was responsible for
furnishing Fulton County jail inmates with medical aid.

87.

Defendant Labat was an official with final responsibility for, and knowingly
promulgated, enforced, and allowed to persist, policies and procedures of the
Jail that, among other things:

a) Caused too few qualified employees, staff, and agents, including
   medical personnel and guards, to be hired at the Jail;

b) Caused the Jail to have inadequate space to enable it to perform
   adequate medical care and security services to its inmates;

c) Caused the Jail to have inadequate resources to enable it to provide
   adequate medical care and security services to inmates;

d)  Caused the Jail to have inadequate training and supervision of its

employees, staff and agents, including guards and medical personnel,

resulting in the inadequate delivery of medical care, provision of

security, and inability to properly conduct the intake and classification

of inmates.

88.

Defendant Labat is also responsible for the training and supervision of Jail

employees, staff and agents, including medical personnel.

89.

Defendant Labat failed to adequately train or supervise its Jail employees,

staff, and agents, including medical employees.

90.

At all times relevant to this complaint, Defendant Labat knew that inmates at

the Jail were not receiving adequate medical care for serious medical needs

and failed to take reasonable steps to address the problem.

91.

Defendant Labat permitted the policy, custom, and practice of understaffing to persist throughout the jail.

92.

Defendant Labat permitted the policy, custom, and practice of denying inmates access to medical care at the Jail to persist.

93.

Defendant Labat permitted the policy, custom, and practice of failing to respond to urgent medical emergencies in a timely and adequate manner.

94.

Defendant Labat permitted the policy, custom, and practice of denying inmates adequate security measures to persist.

95.

Defendant Labat permitted the policy, custom, and practice of not properly protecting mentally ill inmates, failing to segregate them from general population inmates and failing to ensure their safety.

96.

Defendant Labat permitted the policy, custom, and practice of not properly

conducting adequate intake evaluations, suicide risk assessments or housing

assignment determinations.

97.

Defendant Labat knew that his employees, staff, and agents were not

properly providing medical care to inmates, responding adequately to urgent

medical emergencies, protecting mentally ill inmates, segregating at-risk

inmates from general population and ensuring inmates are assigned to

appropriate housing.

98.

A reasonable person in Defendant Labat's position would know that his

failure to provide or cause to be provided medical care to Shane, and his

failure to train and supervise reflected deliberate indifference to Shane's and

other inmates' serious medical needs.

99.

In addition to liability through his own actions and omissions, Defendant

Labat is also liable under the doctrine of *Respondeat Superior* for the acts

and omissions of his officials and employees, as well as the enforcement of

his policies, procedures, and customs that have violated Shane Kendall's rights.

100.

Defendant Labat's actions and inactions exhibited deliberate indifference to the safety and well-being of Shane and subjected him to the unnecessary and wanton infliction of pain, and ultimately, death, which constituted cruel and unusual punishment.

### iv.   **Michael Agyei**

101.

At all times relevant to this Complaint, Michael Agyei, PA-C ("Agyei") was employed by NaphCare, as a Physician's Assistant, and was responsible for providing medical services to inmates at the Fulton County jail.

102.

Upon information and belief, Defendant Agyei is a Physician's Assistant-Certified ("PA-C") licensed to practice in Georgia to diagnose and treat illness as well as provide preventive care under physician supervision, at all times relevant herein.

103.

At all relevant times, Defendant Agyei acted under the color of state law and pursuant to a contract with the Jail. Defendant Agyei was an employee and/or agent and/or ostensible agent of Fulton County and NaphCare. Defendant Agyei is being sued for damages in his individual capacity.

104.

Defendant Agyei is a resident and citizen of the State of Georgia and may be served with process at: 3906 Obryant SE Circle, Smyrna, Georgia 30082-3907 in Cobb County, Georgia. Defendant Agyei is subject to the jurisdiction of this Court, and venue is proper.

105.

At all times relevant to this Complaint, Defendant Agyei was responsible for the administration and delivery of health and medical services at the Jail.

106.

On February 1, 2021, at 6:10am, Defendant Agyei, while working for NaphCare in the Fulton County jail as highest trained medical provider on duty, was notified of an inmate (Shane) who had attempted suicide by hanging and was unresponsive and in need of urgent medical attention. It would have been obvious to a layperson, at that time, that the inmate (Shane) needed immediate medical care. Defendant Agyei did not respond reasonably to the risk. Instead, Defendant Agyei failed to respond with any urgency to Shane's medical emergency, arriving approximately seventeen (17) minutes after receiving the call for help and only then, bringing the Automated External Defibrillator ("AED") to the scene to attempt resuscitation efforts.

107.

Defendant Agyei's actions and inactions exhibited deliberate indifference to the safety and well-being of Shane and subjected him to unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

**v.   Edith Nwankwo**

108.

At all times relevant to this Complaint, Edith Nwankwo, RN ("Nwankwo")
was employed by NaphCare, as a Registered Nurse, and was responsible for
providing medical services to inmates at the Fulton County jail.

109.

Upon information and belief, Defendant Nwankwo is a Registered Nurse,
licensed to provide nursing care in Georgia, at all times relevant herein.

110.

At all relevant times, Defendant Nwankwo acted under the color of state law
and pursuant to a contract with the Jail. Defendant Nwankwo was an
employee and/or agent and/or ostensible agent of Fulton County and
NaphCare. Defendant Nwankwo is being sued for damages in her individual
capacity.

111.

Defendant Nwankwo is a resident and citizen of the State of Georgia and
may be served with process at: 8286 Englewood Trail, Riverdale, Georgia,

30274. Defendant Nwankwo is subject to the jurisdiction of this Court, and

venue is proper.


112.

At all times relevant to this Complaint, Defendant Nwankwo was

responsible for the administration and delivery of health and medical

services at the Jail.


113.

On February 1, 2021, at 6:10am, Defendant Nwankwo, while working for

NaphCare in the Fulton County jail, was notified of an inmate (Shane) who

had attempted suicide by hanging and was unresponsive and in need of

urgent medical attention. It would have been obvious to a layperson, at that

time, that the inmate (Shane) needed immediate medical care. Defendant

Nwankwo did not respond reasonably to the risk. Instead, Defendant

Nwankwo failed to respond with any urgency to Shane's medical emergency

and failed to provide any medical care to him. Upon her arrival at the scene

of Shane's medical emergency, Defendant Nwankwo refused to provide any

medical care to Shane; she would not and did not check his vitals, ensure his

airway was clear, perform CPR or assist in any way with resuscitation efforts or medical care.

114.

Defendant Nwankwo's actions and inactions exhibited deliberate indifference to the safety and well-being of Shane and subjected him to unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

## VII.   CAUSES OF ACTION

### COUNT I
### (ALL DEFENDANTS)
### 42 U.S.C. §1983: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS)

115.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint as if fully restated.

116.

Defendants, acting under the color of state law, were responsible for diagnosing, treating, caring for, and maintaining custody of Shane.

### 117.

While in the custody and care of the Defendants, Shane had serious, life-threatening medical needs that would have been obvious to a layperson.

### 118.

Defendants had actual knowledge of Shane's serious medical needs.

### 119.

Defendants were deliberately indifferent to Shane's serious medical needs in, at least, the following ways:

a) Defendants denied Shane access to a medical facility appropriate for his serious medical needs;

b) Defendants denied Shane access to medical personnel qualified to treat his serious medical needs;

c) Defendants denied Shane access to emergency medical equipment to treat his serious medical needs;

d) Defendants knew that Shane could not breathe, that such condition required immediate and urgent medical assistance and failed to provide such assistance.

## 120.

Defendants' knowledge of Shane's obvious, serious medical needs constitutes actual knowledge of an objectively cruel condition.

## 121.

Defendants' failure to provide medical care for Shane's obvious, serious medical needs was an objectively unreasonable response to a known, substantial risk.

## 122.

Defendants' actions and inactions caused Shane to be deprived of his right to adequate medical care secured by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

123.

As a direct and proximate result of Defendants' violation of his rights, Shane suffered physical injuries, pain and suffering, and mental and emotional distress and death.

124.

Accordingly, Defendants' deliberate indifference to Shane's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

125.

As a direct and proximate result of Defendants' deliberate indifference to Shane's serious medical needs, Shane experienced pain and suffering and died.

126.

As a result of Defendants' actions and inactions, Plaintiff is entitled to compensatory damages for the loss of Shane's life and damages in an amount to be proven at trial for Shane's pain and suffering.

**COUNT II**
**(DEFENDANTS FULTON COUNTY AND NAPHCARE, INC.)**
**42 U.S.C. §1983: VIOLATION OF EIGHTH AND FOURTEENTH**
**AMENDMENTS)**

127.

Plaintiff realleges and incorporates herein the allegations contained in the

preceding paragraphs of this Complaint above as it fully restated.

128.

Defendants Fulton County and NaphCare (collectively, "Count II

Defendants"), acting under the color of state law, were responsible for

Shane's care and were obligated to provide or obtain adequate and effective

medical treatment for him.

129.

The Count II Defendants have a duty to establish and operate in accordance

with the rights guaranteed to citizens under the Constitution of the United

States.

130.

The Count II Defendants have a duty to train its employees, staff, and agents

and establish policies that protect the rights guaranteed to citizens under the

Constitution of the United States.

131.

The Count II Defendants were involved in directing, procuring, and

providing medical care for Shane.

132.

The Count II Defendants were involved in promulgating and enforcing

policies and procedures regarding the medical care that Shane received.

133.

The Count II Defendants promulgated and enforced policies and procedures

that caused the Jail to have grossly insufficient qualified staff, space, and

resources to provide constitutionally adequate medical care to Jail inmates

including Shane.

134.

The Count II Defendants promulgated and enforced policies and procedures

that caused more inmates to be held in the jail than for whom the Jail could

adequately care.

135.

The Count II Defendants had actual knowledge of the grossly inadequate

medical care provided to inmates at the Jail and did not attempt to remedy

the problem.

136.

The Count II Defendants were responsible for training and supervising medical staff involved in providing medical care at the Jail.

137.

The Count II Defendants knew that their subordinates were failing to provide adequate medical care to Shane and did not attempt to remedy the problem.

138.

The Count II Defendants knew that reasonable people in their positions would know that their failure to train and supervise reflected deliberate indifference to serious medical needs.

139.

The Count II Defendants' response to their subordinates' failure to provide medical care to Shane's obvious, serious medical needs was an objectively unreasonable response to a known, substantial risk.

140.

Accordingly, the Count II Defendants' deliberate indifference to Shane's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

141.

Count II Defendants' failure to provide medical care for Shane's obvious, serious medical needs was an objectively unreasonable response to a known, substantial risk.

142.

Count II Defendants' actions and inactions caused Shane to be deprived of his right to adequate medical care secured by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

143.

As a direct and proximate result of Count II Defendants' violation of his rights, Shane suffered physical injuries, pain and suffering, and mental and emotional distress and death.

144.

Accordingly, the Count II Defendants' deliberate indifference to Shane's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

145.

As a direct and proximate result of Count II Defendants' deliberate indifference to Shane's serious medical needs, Shane experienced conscious pain and suffering and died.

146.

As a result of Defendants' actions and inactions, Plaintiff is entitled to compensatory damages for the loss of Shane's life and damages in an amount to be proven at trial for Shane's pain and suffering.

## COUNT III

### (ALL DEFENDANTS)
### CLAIM UNDER GEORGA LAW
### FOR INADEQUATE MEDICAL CARE O.C.G.A. § 42-5-2

147.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint as if fully restated.

148.

Defendants' actions and inactions caused Shane to be deprived of his rights under O.C.G.A § 42-5-2 to adequate medical care.

149.

As a direct and proximate result of Defendants' actions, Shane suffered

medical expenses, physical injuries, pain and suffering and mental and

emotional distress and death.

150.

As a result of Defendants' actions, Plaintiff is entitled to compensatory

damages for the loss of Shane's life, damages in an amount to be proven at

trial for medical expenses and funeral expenses.

151.

In causing Shane's death, Defendants acted with callous and reckless

indifference to his constitutional rights. Defendants' acts were malicious,

wanton and willful. As a result, Plaintiff is entitled to punitive damages in an

amount to be determined at trial.

**COUNT IV**
**(ALL DEFENDANTS)**
**CLAIM UNDER GEORGIA LAW FOR**
**BREACH DUTIES OF SHERIFF, PURSUANT TO O.C.G.A. § 42-4-4**

152.

Plaintiff realleges and incorporates herein the allegations contained in the

preceding paragraphs of this Complaint as if fully restated.

153.

Defendant Labat, by and through himself and his agents, owed particular duties to jail inmates as enumerated in O.C.G.A. § 42-4-4. One such duty was to provide inmates, such as Shane Kendall, with medical aid.

154.

In the above-described actions and inactions, Defendants violated their duties as prescribed by O.C.G.A. § 42-4-4 by failing to provide Shane with necessary medical aid.

155.

As a direct and proximate result of Defendants' violation of his rights and breach of the bond, Shane suffered physical injuries, pain and suffering and mental and emotional distress, and death.

156.

Defendants are liable to Shane in an amount to be proven at trial.

## COUNT V
## (DEFENDANTS NAPHCARE, AGYEI AND NWANKWO)
## CLAIM UNDER GEORGIA LAW FOR MEDICAL MALPRACTICE

157.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint as if fully restated.

158.

At all times relevant, Defendants Agyei and Nwankwo were employees/agents of Defendant NaphCare. As such, Defendant NaphCare is liable for their negligence under the doctrine of *Respondeat Superior.*

159.

The death of Shane was a direct and proximate result of Defendants NaphCare, Agyei, and Nwankwo's negligent conduct, specifically their failure to appropriately assess, monitor, diagnose, respond to and manage Shane's obvious, serious medical needs. These Defendants were negligent in their care and treatment of Shane. This negligence includes but is not limited to their failure to properly and timely assess and treat Shane's condition, their failure to recognize and protect against Shane's attempted suicide and inability to breathe and their unreasonable delay in providing proper treatment to Shane after it was known that he was not breathing and needed immediate medical assistance. More specifically, Defendants,

a) Failed to provide Shane with adequate, continuous medical care;

b) Failed to clear Shane's airway and administer oxygen when it was known Shane was not breathing;

c) Refused and/or failed to provide continuous basic life support/CPR services to Shane;

d) Failed to bring an Automated External Defibrillator ("AED") to the scene of Shane's medical emergency in a timely manner;

e) Failed to respond within a reasonable time to the emergency call for medical assistance for Shane;

f) Failed to adequately complete required forms related to Shane's medical care, including but not limited to, suicide risk assessments, psychological evaluations and narrative reports regarding medical care administered in response to Shane's medical emergency on February 1, 2021;

g) Failed to respond and protect Shane, despite observing, reporting and being aware of his multiple, well-identified risk factors for suicide; and,

h) Failed to adequately supervise, train, hire, and enforce policies and procedures with respect to mental health care, housing classifications, attempted suicide treatment and medical emergencies.

160.

The standard of care for all emergency medical providers (such as Defendants NaphCare, Agyei and Nwankwo and others that were present at the Jail during the early morning hours of February 1, 2021) when it is known that a patient is not breathing to clear the patient's airway and administer oxygen as soon as possible.

161.

Within a reasonable degree of medical certainty, the wrongful acts and omissions  of Defendants NaphCare, Agyei and Nwankwo constituted a breach of the applicable standard of care placed Shane at an increased risk of death. Had they followed the requisite standard of care, Shane's death was avoidable.

162.

The negligence of Defendants NaphCare, Agyei and Nwankwo and other staff involved and responsible for Shane's care allowed his condition to

develop and progress, causing and/or contributing to Shane's injury and
death.

163.

Defendants NaphCare and Agyei were negligent in their supervision of their
medical staff (such as Defendant Nwankwo) with whom they had delegated
aspects of their inmates' care. Such negligence includes but is not limited to
the assignment of patient management without immediate supervision of
adequately trained, competent medical personnel, staff lacking expertise and
ability to properly assess, diagnose, monitor and manage their
inmates/patients' condition. Shane's death was proximately caused by both
the active and passive negligence of Defendants NaphCare, Agyei and
Nwankwo.

164.

The negligence included the failure of Defendants to, promptly and
accurately, communicate Shane's clinical presentation to the appropriate
decision makers.

165.

Pursuant to O.C.G.A § 9-11-9.1, Plaintiff attaches as Exhibit 2 and
incorporates by reference herein the affidavit of Dr. Michael McMunn, a

duly qualified expert competent to testify in this matter, alleging at least one

act of negligence by each medical defendant, and thus fulfilling the

requirements of O.C.G.A. § 9-11-9.1.

166.

Pursuant to O.C.G.A § 9-11-9.1, Plaintiff attaches as Exhibit 3 and

incorporates by reference herein the affidavit of Dr. Keith Wesley, a duly

qualified expert competent to testify in this matter, alleging at least one act

of negligence by each medical defendant, and thus fulfilling the

requirements of O.C.G.A. § 9-11-9.1.

## COUNT V
## (DEFENDANT NAPHCARE)
## CLAIM UNDER GEORGIA LAW FOR NEGLIGENT CREDENTIALING

167.

Plaintiff realleges and incorporates herein the allegations contained in the

preceding paragraphs of this Complaint as if fully restated.

168.

Defendant NaphCare was negligent in the credentialing of various practitioners, physicians, agents, and employees who provided care to Shane, and in their continued retention, and failure to supervise such physicians, practitioners, agents and employees.

169.

Defendant NaphCare was negligent in failing to train and/or otherwise establish that various practitioners responsible for and involved in the care of Shane had the requisite knowledge and expertise to attend, diagnose, and treat such a patient/inmate without hands-on supervision and in failing to have adequate and appropriate safeguards to ensure that the treatment of life-threatening conditions and/or conditions being the knowledge and expertise of its nurses, medical assistants and technicians and/or staff were handled and addressed by a physician or other appropriate medical personnel, and in such other and further acts of negligence as may be shown at trial.

170.

As a result of the negligence of Defendant NaphCare, Shane suffered

medical expenses, physical injuries, pain and suffering, mental and

emotional distress, and death.

## COUNT VI
## (ALL DEFENDANTS)
## ORDINARY NEGLIGENCE

171.

Plaintiff realleges and incorporates herein the allegations contained in the

preceding paragraphs of this Complaint as if fully restated.

172.

Defendants, whether themselves or through their agents, employees, or

personnel, had a duty to exercise ordinary and reasonable care in their

provision of services to Shane Kendall.

173.

The Defendants failed to exercise ordinary and reasonable care in their

provision of services to Shane Kendall, including but not limited to the

refusal to even provide basic continuous life support/CPR and AED services

on a timely basis, which constitute ministerial acts.

174.

As a direct and proximate result of the ordinary negligence committed by the
Defendants, whether themselves directly or through their agents, employees,
or personnel, Shane Kendall suffered physical and mental pain and suffering
prior to his death, including, without limitation, the pain and suffering
caused by the events laid out above.

175.

Accordingly, Plaintiff Harold Joseph Kendall, as the Administrator of the
Estate of Shane Kendall, is entitled to recover damages for the pain and
suffering, medical expenses and funeral/burial expenses incurred as a result
of the ordinary negligence of the Defendants.

176.

Defendants are liable to Plaintiff Harold Joseph Kendall, as the
Administrator of the Estate of Shane Kendall, for the pain and suffering,
medical expenses and funeral/burial expenses incurred as a result of the
ordinary negligence of the Defendants.

177.

As a direct and proximate result of the ordinary negligence of the Defendants, whether directly or by and through their employees, agents or personnel, Shane Kendall died.

178.

Accordingly, Plaintiff Harold Joseph Kendall, as the sole surviving heir of Shane Kendall, is entitled to bring a wrongful death action for the death of Shane Kendall and is entitled to recover for the full value of the life of the decedent from said Defendants.

179.

Defendants are liable to Plaintiff Harold Joseph Kendall for the full value of the life of Shane Kendall.

## COUNT VII
## (DEFENDANTS FULTON COUNTY, LABAT, NAPHCARE) NUISANCE

180.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint as if fully restated.

181.

Defendants have continuously and knowingly provided inadequate medical care and security services to its inmates.

182.

Defendants had knowledge that the failure to provide adequate medical and security services to inmates constituted a dangerous condition that would cause imminent and likely harm to inmates.

183.

Despite such knowledge, Defendants failed to take any action to correct the conditions thereby maintain conditions in which inadequate medical care and security services continued to be provided.

184.

The Defendants failure to take corrective action, and thereby continuing to provide inadequate medical care and security services, and with knowledge of imminent and likely harm to inmates, exceeds the concept of mere negligence.

185.

Defendants' actions and inactions, including the failure to take corrective action, constituted a continuing nuisance.

186.

As a direct and proximate result of the continuing nuisance created by

Defendants, Shane Kendall suffered physical injuries, pain and suffering,

and mental and emotional distress, and death.

**COUNT VIII**
**(ALL DEFENDANTS)**
**PUNITIVE DAMAGES**

187.

Plaintiff realleges and incorporates herein the allegations contained in the

preceding paragraphs of this Complaint as if fully restated.

188.

Defendants' conduct as described above was reckless, willful, and wanton

failure to act and demonstrates a conscious deliberate indifference to the

consequences of his actions and entitles Plaintiff to an award of punitive

damages under 42 U.S.C. §1983.

189.

Defendants' conduct as described above as active tort-feasors was reckless,

willful, and wanton failure to act demonstrates a conscious deliberate

indifference and to the consequences of his actions and entitles Plaintiff to

an award of punitive damages under O.C.G.A § 51-12-5.1.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays that this Court award the following relief

from Defendants:

a)  An award of compensatory damages in an amount to be proven at trial,

    including interest;

b)  An award of punitive damages in favor Plaintiffs against all Defendants

c)  All costs of court, including attorney's fees and expert fees under 42

    U.S.C. § 1988; and

d)  Plaintiff have a trial by jury; and,

e)  Such other and further relief as the Court may deem just and proper.

    Respectfully submitted, this the 27th day of January, 2023.

                    */s/Rachel Kaufman*
                    Rachel M. Kaufman
                    Attorney for Defendant
                    Georgia Bar No. 491375

Kaufman Law Firm LLC
133 Nassau Street NW
Atlanta, GA 30303-2035
T: 404.615.7588   F: 404.759.2339