**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HAROLD JOSEPH KENDALL | ) | |
| Individually, and as | ) | |
| the Administrator of the | ) | |
| ESTATE OF SHANE MIGUEL | ) | |
| KENDALL, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | 1:23-cv-00416-JPB |
| | ) | |
| v. | ) | |
| | ) | |
| FULTON COUNTY, GEORGIA, | ) | |
| NAPCARE, INC. | ) | |
| SHERIFF PATRICK LABAT, | ) | |
| in his individual capacity and in his | ) | |
| official capacity as Sheriff of | ) | |
| Fulton County, Georgia, | ) | |
| MICHAEL AGYEI, individually and, | ) | |
| EDITH NWANKWO, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**FULTON COUNTY AND SHERIFF PATRICK LABAT'S BRIEF IN SUPPORT OF 12(B)(6) MOTION TO DISMISS**

COME NOW Fulton County and Sheriff Patrick Labat, and file this brief in support of their Motion to Dismiss Plaintiff's Complaint. (Doc. 1)

## INTRODUCTION

Plaintiff alleges there was a failure to establish reasonable policies and procedures at the Fulton County Jail regarding medical care and the staffing and

1

training of officers. The claims against Fulton County should be dismissed as a matter of law because Fulton County cannot be held liable for the policy making of the duly elected sheriff. *Grech v. Clayton County*, 335 F.3d. 1326, 1336 (2003). Further, Sheriff Labat, in his official capacity, has Eleventh Amendment immunity to Plaintiff's claims because he is an arm of the state when promulgating policies for the jail. *Purcell ex. rel. Estate of Morgan v. Toombs County, Georgia*, 400 F.3d 1313, 1324 (11th Cir. 2005). In addition, Sheriff Labat has qualified immunity in his individual capacity for the claims raised by Plaintiff.

## FACTS AS ALLEGED WITHIN THE COMPLAINT

According to the underlying Complaint, Harold Joseph Kendall ("Plaintiff" and adoptive father of the decedent) individually and as Administrator of the Estate of Shane Miguel Kendall ("decedent") brought suit against Fulton County, Fulton County Sheriff Patrick Labat, NaphCare, Inc., Michael Agyei and Edith Nwankwo of NaphCare on January 27, 2023 in the United States District Court for the Northern District of Georgia, alleging violations of the decedent's Constitutional Rights and Georgia Law. (Doc. 1, generally).

Plaintiff alleges that decedent, a former inmate at the Fulton County Jail, was found unresponsive in his cell on the morning of February 1, 2021. (Doc. 1, ¶3). The lawsuit further alleges that at approximately 5:26 a.m. jail staff conducted security

rounds and noted no issues or concerns regarding the decedent or anything occurring within his cell. (Doc. 1, ¶31). Thereafter, when jail staff conducted their next security rounds at 6:07 a.m. on February 1, 2021, the decedent was found unresponsive and hanging by a bedsheet tied to his bunkbed within his cell. (Doc. 1, ¶32). Shortly thereafter, Jail staff put out an emergency call to onsite medical providers. (Doc. 1, ¶33). The complaint further alleges that NaphCare medical staff within the Jail failed to timely act and render assistance. (Doc. 1, ¶5). The Complaint states that upon arrival, NaphCare RN Edith Nwankwo refused to perform CPR or provide any medical treatment, telling jail staff she had a bad knee. (Doc. 1, ¶36). Additionally, the Complaint states that a second Naphcare representative, Michael Agyei PA-C appeared on scene more than 15 minutes after the call, hindered resuscitation efforts, was visibly disoriented and unable to provide care or treatment. (Doc. 1, ¶37). Shortly thereafter EMS pronounced the decedent dead at the scene.

**Count I** of the complaint alleges that all defendants, including Fulton County and Sheriff Labat, were deliberately indifferent to the decedent's medical needs by denying him access to an appropriate medical facility, qualified medical personnel, access to emergency equipment and assistance when he required immediate and urgent care. (Doc. 1, ¶ ¶ 119, 124). **Count II** alleges that Fulton County and Naphcare, Inc. promulgated and enforced policies and procedures which caused the

jail to have grossly insufficient qualified staff, space and resources to provide constitutionally adequate care (Doc. 1, ¶ 133). **Count III** alleges that all defendants, including Fulton County and Sheriff Labat deprived decedent of his rights under O.C.G.A. § 42-5-2 to adequate medical care; acted with callous and reckless indifference entitling Plaintiff to punitive damages. (Doc. 1, ¶¶ 148,151). **Count IV** alleges that all defendants, including Fulton County and Sheriff Labat, owed the decedent particular duties in accordance with O.C.G.A. § 42-4-4, yet failed to provide the decedent with necessary medical aid in violation of the same. (Doc. 1, ¶ 154). **Count VI** alleges that all defendants, including Fulton County and Sheriff Labat, failed to exercise ordinary and reasonable care in their provision of services to the decedent, including refusal to provide basic continuous life support and AED services. (Doc. 1, ¶173). **Count VII** alleges that Fulton County, Sheriff Labat and NaphCare, knowingly provided inadequate medical care and security services to its inmates, had knowledge of imminent and likely harm to inmates and failed to take corrective action, constituting a continuing nuisance. (Doc. 1, ¶¶ 181, 184-85). Lastly, **Count VIII** alleges against all defendants, including Fulton County and Sheriff Labat, that their conduct was reckless, willful and wanton in failing to act and demonstrates a conscious deliberate indifference to consequences of said

actions, entitling Plaintiff to an award of punitive damages under 42 U.S.C. § 1983. (Doc. 1, ¶¶ 188).

## <u>STANDARD FOR GRANTING MOTION TO DISMISS</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the ground that the plaintiff failed to state a claim upon which relief may be granted. "A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Acosta v. Campbell*, 309 F. App'x 315, 317 (11th Cir. 2009) (quoting Fed.R.Civ.P. 8(a)(2)). Therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubet*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991); *See* also *Brower v. County of Inyo*, 489 U.S. 593, 598(1989). A plaintiff's claims will survive a motion to dismiss if the complaint pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not

prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Rather, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the facts alleged in a complaint are assumed to be true for purposes of a motion to dismiss, conclusory allegations and legal conclusions are entitled to no deference in the court's consideration of such a motion. *See South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996); *see also Lewis v. Brautigam,* 227 F.2d 124, 127 (5th Cir. 1955) ("In determining the sufficiency of the complaint, the material facts, but not the unsupported conclusions of the pleader, are considered in the light most favorable to the plaintiff.").

When courts consider a motion to dismiss, they employ a two-step process. *See Iqbal*, 556 U.S. at 678-81; *see also Franklin v. Curry*, 738 F.3d 1246, 1250-51 (11th Cir. 2013). The first step is to identify the allegations that are "no more than conclusions." *Iqbal*, 556 U.S. at 679. Second, after disregarding conclusory allegations, the Court must determine whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Id.*

"A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone*

*v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). Prior to *Iqbal*, in an effort to "eliminate nonmeritorious claims," the Eleventh Circuit employed a heightened pleading standard in § 1983 cases involving qualified immunity. *See Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 837-38 (11th Cir. 2004) (noting that a "heightened Rule 8 requirement" is applied to allegations likely to invoke defenses of qualified or absolute immunity). It has been held subsequently that "whatever requirements our heightened pleading standard once imposed have since been replaced by those of the *Twombly-Iqbal* plausibility standard." *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010). "Thus…complaints in § 1983 cases must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (citation and quotations omitted).

## ARGUMENT AND CITATION OF AUTHORITY

### I. FULTON COUNTY IS ENTITLED TO DIMISSAL AS A MATTER OF LAW BECAUSE IT IS NOT A POLICYMAKER FOR THE SHERIFF'S OFFICE

#### A. *Federal Claims – Counts I and II*

Plaintiff's claims, specifically counts I and II as against Fulton County, fail as a matter of law. Fulton County is a separate and distinct legal entity from Sheriff Patrick Labat, an elected official. In fact, the Georgia Constitution precludes the

County from exercising any authority over the Sheriff.  In *Grech v. Clayton County,* 335 F.3d 1326, 1336 (2003), the Eleventh Circuit held that *"*counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and policies."

Fulton County does not have an obligation to provide inmates with medical care. "With respect to county jails, O.C.G.A. § 42-5-2 imposes two separate duties: the county must fund the provisions of medical care, and the Sheriff must select an appropriate provider and ensure that inmates receive care when necessary." *Palmer v. Correct Care Sols., LLC.*, 291 F. Supp. 3d, 1357, 1365 (M.D. Ga. 2017), quoting *Lake v. Skeleton*, 840 F.3d 1334, 1341 (11th Cir. 2016). When the Sheriff provides medical care to inmates, he acts as an arm of the state, not the county. *Palmer*, 291 F. Supp. 3d at 1366. Where Fulton County has no obligation to provide medical care to inmates, and the Sheriff acts as an arm of the state when providing medical care, Fulton County cannot be held liable.

Fulton County has no authority over the Sheriff or his employees, nor does it prescribe or control the policies promulgated by the Sheriff on behalf of the Jail. There is no official policy by Fulton County that caused the alleged constitutional violations for which the County could be held liable under § 1983. With respect to

8

Plaintiff's federal claims, "[a] county is liable under section 1983 only for acts which the county is actually responsible. Indeed, a county is liable only when the county's 'official policy' causes a constitutional violation." *Grech*, 335 F.3d at 1329. (citations, quotations, and punctuation omitted); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff "has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech*, 335 F.3d at 1329. Under either method, Plaintiff "(1) must show that…the county [] has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for [the county] concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* at 1330. "Whether a particular official has final policy-making authority is a question of state law, and a legal question for the court." *Chaney v. Fayette County Public School Dist.*, 977 F.Supp. 2d 1308, 1319 (N.D. Ga 2013). Further, Plaintiff must allege a direct causal link between an alleged policy and the alleged violation of a constitutional right. *Grech*, 335 F3d at 1329.

In the instant case, Plaintiff fails to identify either an official policy of Fulton County or "an unofficial custom or practice of the county shown through the

repeated acts of a final policymaker for the county" resulting in a violation of Plaintiff's or decedent's constitutional rights. *See Grech*, 335 F.3d at 1329; *see also Guerra v. Rockdale Cty., Ga.*, 420 F.Supp.3d 1327, 1343 (N.D. Ga. 2019) ("Plaintiff has failed to allege any causal link between a county policy and the alleged violation of his constitutional rights"). Fulton County does not otherwise maintain authority and responsibility over the Fulton County Sheriff, including the Jail, as that function rests soundly with Sheriff Labat. *See* O.C.G.A. § 42-4-1(a); *see also Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 260 Ga. 482, 482 (1990) (Sheriff is an elected constitutional officer; not an employee of the county commission). Further, the Eleventh Circuit has already held that a Georgia Sheriff does not set policy for a County. *Grech*, 335 F.3d 1326.

Moreover, insofar as Plaintiff named Fulton County as a defendant based upon a theory of *respondeat superior* or vicarious liability, "the Eleventh Circuit held that Georgia sheriffs are not county policymakers when performing their law enforcement function" such that Plaintiff "cannot assert § 1983 claims against [Fulton] County arising from the law enforcement actions of" Sheriff Labat. *Guerra*, 420 F.Supp.3d at 1342. A Sheriff's Office is not governed by county administration and Fulton County does not exercise constraints or control over the policies within the Sheriff's office. *Manders*, 338 F.3d at 1310.

Moreover, counties have no role in the training or supervision of the Sheriff's employees. Sheriff's exercise authority over their employees independent from the county. *Grech*, 335 F.3d at 1336. Employees of constitutionally elected officers of a county are considered employees of the elected officer, not employees of the county. *Boswell v. Bramlett*, 274 Ga. 50, 51 (Ga. 2001) (the Georgia Constitution "distinguishes between county employees and employees of elected officials"). As such, Futon County cannot be held liable for the alleged failure to establish policies at the jail. Furthermore, there are no facts alleged showing the existence of a Fulton County policy that violated decedent's rights. Accordingly, Plaintiff's claims against Fulton County fail as a matter of law and should be dismissed.

B. *State Law Claims – Counts III, IV, VI, VII and VIII*

State law sovereign immunity shields Fulton County from Plaintiff's state law claims, including counts III, IV, VI, VII and VIII. "Simply put, the constitutional doctrine of sovereign immunity forbids our courts to entertain a lawsuit against the State without its consent." *Lathrop v. Deal*, 301 Ga. 408, 408, 801 S.E.2d 867, 869 (2017). This constitutional shield from suit also extends to counties within the State of Georgia. "We hold, therefore, that under Article I, Section II, Paragraph IX of the Constitution of the State of Georgia, 1983, sovereign immunity is extended to the counties of the State of Georgia." *See id; Presnell v. Paulding County, Ga.* 454

Fed.Appx. 763, 769 (11th Cir. 2011). Moreover, the 11th Circuit has recognized that under Georgia law counties are "immune from suit for any cause of action, unless sovereign immunity is expressly waived by constitutional provision or statute." *Kitchen v. CSX Transp., Inc*., 6 F.3d 727 (11th Cir. 1993).

In the instant matter Plaintiff's Complaint is devoid of any allegations that would demonstrate that either the State or General Assembly has waived Fulton County's sovereign immunity with respect to the underlying matter. Because sovereign immunity is not an affirmative defense that must be established by Fulton County but rather a privilege that is subject to waiver by the State, any waiver must be established by the party seeking to benefit from the waiver. *Dep't of Transportation v. Thompson*, 354 Ga. App. 200, 202, 840 S.E.2d 679, 682 (2020). Therefore, the Plaintiff carries the burden of showing there is a waiver of sovereign immunity. Consequently, Plaintiff's Complaint alleges no facts, because there are none, that demonstrate Fulton County's sovereign immunity has been waived in any way. Accordingly, Fulton County is shielded from the state law claims as a result of the doctrine of sovereign immunity.

## II.  FULTON COUNTY SHERIFF LABAT IS ENTITLED TO IMMUNITY IN HIS OFFICIAL CAPACITY

### A. *Federal Claims – Count I*

Plaintiff's Eighth and Fourteenth Amendment claims against Sheriff Labat in his official capacity are barred as a matter of law because at all pertinent times he was acting as an arm of the state. "Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an arm of the State is sued." *Pellitteri v. Prine*, 776 F.3d 777, 779 (11th Cir. 2015) (quotations omitted), *citing Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). "To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State." *Pellitteri*, 776 F.3d at 779 (citation and quotations omitted).

A Georgia Sheriff, as indicated in *Manders*, acts as an arm of the State when performing his duties at the jail; thus, he is entitled to Eleventh Amendment immunity when sued in his official capacity as a result of performing such duties. *See Manders*, 338 F.3d at 1309-28; *Palmer v. Correct Care Sols., LLC.*, 291 F. Supp. 3d, 1357, 1366 (M.D. Ga. 2017)(when Sheriff provides medical care for purposes of Eleventh Amendment immunity, he acts as an arm of the State); *Purcell ex. rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1325 (11th Cir. 2005) (Georgia Sheriff acts as an arm of the State when promulgating policies and

procedures governing conditions of confinement at the jail and is therefore entitled to Eleventh Amendment immunity).

Under Section 1983, neither a State nor its officials acting in their official capacities are considered "persons." *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, they cannot be held liable under Section 1983. Likewise, to the extent that Sheriff Labat is functioning as an arm of the State while operating the Jail, he cannot be held liable for Section 1983 claims against him in his official capacity because he is not a "person" within the meaning of Section 1983. *See generally Grech*, 335 F.3d 1326.

Throughout Plaintiff's Complaint he alleges that Sheriff Patrick Labat was at all times relevant to this action "responsible for the operations of the Fulton County Sheriff's Office, including the Fulton County Jail;" "responsible for the day-to-day operations of the Jail, and in his official capacity as Sheriff, had custody, control and charge of the jail and inmates;" and was "acting under the color of state law," among other allegations. On its face, Plaintiff concedes that Sheriff Patrick Labat was engaged in promulgating policies and procedures governing conditions of confinement at the jail, which in effect is 'acting as an arm of the state'. (Doc. 1 ¶¶ 84, 116). An action against a government official in his or her official capacity is in reality an action against the government entity the official represents. Since Sheriff

Labat is considered a state actor for the purposes of this claim, then Plaintiff's claim against Sheriff Labat in reality is a claim against the State. Thus, Sheriff Labat is entitled to Eleventh Amendment Immunity when promulgating policies and procedures governing conditions of confinement at the jail. Accordingly, Plaintiff's Section 1983 claim, including his Eighth and Fourteenth Amendment claims, are barred by Sheriff Patrick Labat's entitlement to Eleventh Amendment immunity.

B. *State Law Claims – Counts III, IV, VI, VII and VIII*

State law sovereign immunity shields Fulton County Sheriff Patrick Labat, in his official capacity, from Plaintiff's state law claims, including counts III, IV, VI, VII and VIII. "The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Cameron v. Lang,* 274 Ga. at 126(3), 549 S.E.2d 341. Suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." *See Wendelken v. JENK LLC*, 291 Ga. App. 30, 32, 661 S.E.2d 152, 155 (2008). It also follows that Sheriffs, such as Sheriff Labat, are state actors, who are also entitled to sovereign immunity. *Lake v. Skelton*, 840 F.3d 1334 (11th Cir. 2016). Fulton County Sheriff Patrick Labat, who is a public official being sued in his official capacity on state law

claims, in reality is a suit as against the State, which entitles him to sovereign immunity.

### III.     FULTON COUNTY SHERIFF LABAT IS ENTITLED TO QUALIFIED IMMUNITY IN HIS INDIVIDUAL CAPACITY

A. *Federal Claims – Count I*

Qualified immunity shields Fulton County Sheriff Labat, in his individual capacity, from Plaintiff's federal claims. Qualified immunity protects government employees from suit in their individual capacities for discretionary actions in which they engage in the course of their duties. *Alcocer v. Mills*, 906 F.3d 944 (11th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *See Alcocer* at 944. In a § 1983 action, qualified immunity only protects public officials from lawsuits brought against them in their individual capacity. 42 U.S.C.A. § 1983. *See Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027 (11th Cir. 2008).

"Under the doctrine of qualified immunity, government officials are shielded from liability when acting within the scope of their discretionary authority unless they violated a plaintiff's clearly established statutory or constitutional rights." *Butler v. Smith*, No. 1:19-CV-3150-JPB, 2022 WL 846780, at *5 (N.D. Ga. Mar. 21,

2022). "Once a defendant shows that her actions were within her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (internal quotation marks omitted). An official who asserts entitlement to qualified immunity must first establish that she or he was acting within the scope of his discretionary authority. *See Harlow v. Fitzgerald,* 457 U.S. 800, 951 (1982). To determine if there is discretionary authority, the court examines whether the official was performing a legitimate job-related function through a means that was within the official's power to utilize. *Holloman ex. Rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

In the case at bar, it is undisputed that Sheriff Labat was acting within the scope of his discretionary authority as Fulton County Sheriff. In fact, Plaintiff concedes within his Complaint, that "at all relevant times [Sheriff] Labat acted under the color of state law." (Doc. 1, ¶84). Further, the complaint alleges, that "at all times relevant to this action, Patrick Labat was the Sheriff of Fulton County… was responsible for operations of the jail, and in his Official capacity as Sheriff…" (Doc. 1, ¶ 84) "A public official acts within the scope of his discretionary authority where the acts complained of were "undertaken pursuant to the performance of his duties and within the scope of his authority." *Guerra v. Rockdale Cnty., Georgia*, 420 F. Supp. 3d 1327, 1337–38 (N.D. Ga. 2019). The Complaint alleges the acts

complained of the Sheriff are namely that, he was "… an official with final responsibility for and knowingly promulgated, enforced, and allowed to persist, policies and procedures of the Jail that, among other things: caused too few qualified employees… caused the Jail to have inadequate space to enable it to perform adequate medical care… caused the Jail to have inadequate resources…" among other allegations which fall within the scope of his authority as Sheriff. (Doc. 1, ¶ 87) These allegations demonstrate complaints regarding the supposed acts Sheriff Labat undertook in the performance of his duties as Sheriff, and within the scope of his authority. On its face the Complaint attempts to allege acts within the scope of Sheriff Labat's discretionary authority as Sheriff. Having shown that the acts alleged fall within the Sheriff's discretionary authority, the burden now shifts to Plaintiff to demonstrate that qualified immunity is inappropriate. *Id. at* 457 U.S. 800, 951. However, the allegations within the Complaint are not sufficient to establish that Sheriff Labat's entitlement to qualified immunity is overcome.

Overcoming qualified immunity requires the Plaintiff demonstrate that Sheriff Labat violated a constitutional right of decedent's that was clearly established as of February 1, 2021. *See Patel v. Lanier Cty*., Ga., 969 F.3d 1173, 1181 (11th Cir. 2020). In order to demonstrate whether a constitutional right was clearly established at the time alleged, the 11th Circuit has prescribed two ways in which we can make

said determination. The first one "looks at the relevant case law at the time of the violation" to determine whether "a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law." *Id.* (alteration and quotation marks omitted). The second method considers "the officer's conduct and inquires whether that conduct lies so obviously at the very core of what the [constitution] prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law." *Moton v. Walker*, 545 F. App'x 856, 858 (11th Cir. 2013). Absent such a showing by Plaintiff, Sheriff Labat is entitled to qualified immunity.

Taking all of the allegations as true, the Complaint still lacks sufficient allegations to demonstrate that Sheriff Labat's conduct, or lack thereof was so obvious to any government actor that his actions/inactions violated Plaintiff's (e.g. decedent's) constitutional rights; nor are there any allegations to establish that Sheriff Labat's actions were so obvious that the alleged unlawfulness of the same was so apparent, aside from Plaintiff's conclusory statements therein. (Doc. 1, ¶¶ 87 – 100, 119-126). *See South Fla. Water Mgmt. Dist. at* 409; *see also Lewis* at 127. Consequently, Plaintiff is not able to overcome Sheriff Labat's right to qualified immunity. The elements of a deliberate indifference claim are (1) that decedent had an objectively serious medical need; (2) that the Sheriff acted with deliberate

indifference to that need; and (3) that the deliberate indifference caused the injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). Aside from conclusory advancements, there are no allegations that Sheriff Labat observed the decedent or was aware of any serious medical need or that he was subjected to unconstitutional conditions of confinement. There is absolutely no indication that Sheriff Labat had any subjective awareness of the decedent or his condition. *Temple v. McIntosh County, et al.*, No. 2:18-CV-91, 2019 WL 287482, at \*5 (S.D. Ga. Jan. 22, 2019). Plaintiff does not allege that Sheriff Labat had any personal involvement in decedent's medical treatment or death. (*See generally* Doc. 1). Instead, Plaintiff seeks to hold Sheriff Labat liable as a supervisor who allegedly failed to establish certain policies and adequately staff and train jail employees.

Sheriff Labat operates within his discretionary authority when creating policies for the Jail, thus Plaintiff must establish supervisory liability by demonstrating a causal connection exists between his actions, as the supervisor, and the unconstitutional conduct. *Keith*, 749 F.3d 1034, 1047-48 (11th Cir. 2014). Here, there is no causal connection between Sheriff Labat's actions and any alleged unconstitutional conduct that would establish supervisory liability. A causal connection is shown where a supervisor's custom or policy results in deliberate indifference to a constitutional right or when facts support an inference that the

supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Temple v. McIntosh County, et al.*, No. 2:18-CV-91, 2019 WL 287482, at *5 (S.D. Ga. Jan. 22, 2019).

In *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), Plaintiffs asserted a deliberate indifference claim against several jail staff Defendants in regards to decedent Peter Cottone, a pre-trial detainee at the North Broward Detention Center. *Cottone*, F.3d at 1356. Therein, Plaintiffs alleged that several of the defendants had supervisory liability for Cottone's death due to their failure to train and to supervise deputy sheriffs and correction officers under their command. *Id*. at 1357. Plaintiffs did not allege that Defendants personally participated in any alleged unconstitutional conduct which led to Cottone's death; instead, Plaintiffs alleged that there was a causal connection between the Defendants and Cottone's death based on Defendants' failure to train and to supervise the guards. *Id*. The *Cottone* Defendants filed a motion to dismiss, which the Court granted, based on qualified immunity. Thus, the Court found that Plaintiffs did not allege any specific facts connecting the supervisors to their subordinates' failure to monitor inmates. *Id*. at 1362, 1363. Similarly, here, Plaintiff has not alleged a causal connection between the death of Mr. Kendall (the decedent) and Sheriff Labat. Plaintiff has not alleged that Sheriff Labat participated or directed jail personnel to act unlawfully. Plaintiff has also

failed to allege any facts that would demonstrate that Sheriff Labat was on notice of any unconstitutional conduct carried out by his employees or medical personnel. Here, the Complaint contains only conclusory assertions that Sheriff Labat, his employees and medical personnel were deliberately indifferent to the decedent's medical needs. This is simply insufficient to deprive Sheriff Labat of immunity.

B. *State Law Claims – Counts III, IV, VI, VII and VIII*

Official immunity shields Fulton County Sheriff Labat, in his individual capacity, from Plaintiff's state law claims, including counts III, IV, VI, VII and VIII. The Georgia Constitution provides official immunity to state and county officers and employees from claims against them in their individual capacities. *See* Ga. Cons. Of 1983. Art. I, Sec. II, Par. IX (d). "When a public employee is sued over his misperformance or nonperformance of a discretionary act, the employee may be held liable only where evidence shows he or she acted with 'actual malice or with actual intent to cause injury in the performance of (his or her) official functions." Ga. Const.1983, Art. I, Sec. II, Par. IX (d). *See Wendelken v. JENK LLC*, 291 Ga. App. 30, 31 (2008). "The doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang,* 274 Ga. 122, 549 S.E.2d 341, 344 (2001). *Tisdale v. Gravitt*, 51 F. Supp. 3d 1378, 1398 (N.D. Ga. 2014). Public officers and employees are immune from claims

arising from performance of their discretionary functions unless they act with actual malice or actual intent to cause injury. "…an officer may only be liable for the performance of a discretionary function if he acts with actual malice or an intent to injure." *Cameron,*549 S.E.2d at 345. The Supreme Court has determined that 'actual malice' excludes any concept of 'implied malice' or 'reckless disregard' and means only 'express malice or malice in fact.' (Cit.)" *Caldwell v. Griffin Spalding County Bd. of Ed.,* 232 Ga.App. 892, 503 S.E.2d 43 (1998).

Throughout this brief we've determined that Sheriff Patrick Labat is being sued as a result of acts undertaken within his discretionary function as Sheriff. "A discretionary act is one calling for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. *Clive v. Gregory,* 280 Ga App. 836, 841 (2006). Further, from the construction of the Complaint it is clear that Plaintiff is alleging Sheriff Labat failed to perform said discretionary acts which led to injury. More specifically, Plaintiff alleges that Sheriff Labat's "actions and inactions caused [decedent] to be deprived of his rights…to adequate medical care;" "… violated [his] duty as prescribed by O.C.G.A. § 42-4-4by **failing** to provide [decedent] with necessary medical aid;" "as a direct and proximate result of the ordinary negligence of [Sheriff Labat] whether directly or by and through their

employees, agents or personnel, [decedent] died;" and "[Sheriff Labat]…continuously and knowingly **provided inadequate** medical care and security services…;" (Doc. 1, ¶¶ 148, 154, 177, 181). (emphasis added). These allegations demonstrate the alleged misperformance of Sheriff's Labat's discretionary acts, but they do not demonstrate that this 'misperformance' was done with actual malice or intent to cause injury.

In order to prove actual malice or intent to cause injury Plaintiff must demonstrate that Sheriff Labat had a deliberate intention to do wrong. *See Merrow v. Hawkins*, 266 Ga. 390, 391, 467 S.E.2d 336, 337 (1996). "actual malice" requires a deliberate intention to do wrong. *See id.* In *Merrow v. Hawkins*, the Georgia Supreme Court held that the drafters of 1991 amendment to Art. I, Sec. II, Par. IX, which defines actual malice within the context of official immunity, "intended [] to exclude any liability for injuries and damages if officers and employees act with **implied malice** in the performance of their official functions. *Id.* at 392. (emphasis added). The Supreme Court has determined that "actual malice" excludes any concept of "implied malice" or "reckless disregard" and means only "express malice or malice in fact." *Caldwell v. Griffin Spalding Cnty. Bd. of Educ.*, 232 Ga. App. 892, 892, 503 S.E.2d 43, 44 (1998).

The Complaint is devoid of any allegations to suggest that Sheriff Labat bore a deliberate intention to do wrong. Instead, the Complaint is littered with conclusions of "deliberate indifference" which is not tantamount to "actual malice" despite Plaintiff's efforts to conflate the two. Rather, deliberate indifference "is an exacting standard ... which requires showing more than gross negligence." *See DeKalb Cnty. v. Stanley*, 361 Ga. App. 751, 755, 863 S.E.2d 558, 563 (2021), <u>reconsideration denied </u>(Nov. 2, 2021), <u>cert. denied </u>(Aug. 9, 2022). "It requires proof that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *See id.* This is inapposite to a deliberate intention to do wrong. Sheriff Labat is immune from suit and is entitled to immunity because these claims stem from acts done within his discretionary function and the Complaint lacks any allegations to establish a deliberate intention to do wrong on his part. Accordingly, dismissal of the state law claims is warranted as against Sheriff Patrick Labat in his individual capacity.

## **<u>CONCLUSION</u>**

Based on the foregoing, Fulton County and Sheriff Patrick Labat respectfully request that this Court grants its Motion to Dismiss Plaintiff's Complaint in its entirety and stay discovery until their Motion to Dismiss has been ruled upon.

Respectfully submitted, this 23rd of February 2023.

Y. Soo Jo
Fulton County Attorney
**OFFICE OF THE FULTON COUNTY ATTORNEY**

Kaye W. Woodard-Burwell
Deputy County Counsel
Georgia Bar No. 775060

Brad Bowman
Supervising County Counsel
Georgia Bar No. 215007

/s/ Sandy Milord
Sandy Milord
Senior Assistant County Counsel
Georgia Bar No. 622391

**ATTORNEYS FOR FULTON COUNTY AND SHERIFF PATRICK LABAT**

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)